1  Christopher R. Clark (Bar No. 124393)
2  **FINGAL, FAHRNEY & CLARK, LLP**
   5120 Campus Drive, Suite 200
3  Newport Beach, California 92660
   Phone: (949) 723-8100
4  Fax: (949) 723-8108
   Email: cclark@ffc-law.com
5
6  Attorneys for Plaintiff
   Riviera Beverages, LLC
7
8  **NORTON ROSE FULBRIGHT US LLP**
   JEFFREY MARGULIES (Bar No. 126002)
   RAYMOND MURO (BAR NO. 259871)
9  555 South Flower Street
10 Forty-First Floor
   Los Angeles, California  90071
11 Telephone:  (213) 892-9200
   Facsimile:   (213) 892-9494
12 jeff.margulies@nortonrosefulbright.com
   raymond.muro@nortonrosefulbright.com
13
14 Attorneys for Defendant
   INNOVASOURCE LLC
15

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVIERA BEVERAGES, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> INNOVASOURCE, LLC, a North Carolina limited liability company; MIDWEST ETHANOL, LLC, a Minnesota limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No. 8:22-cv-00912 FWS(ADSx) <br><br> Assigned For All Purposes To Honorable Fred W. Slaughter Courtroom 10D <br><br> Complaint Filed:  November 4, 2021 <br> Action Removed:  May 3, 2022 <br> Trial Date:  None Set <br><br> **JOINT RULE 26(f) REPORT** <br><br> **Scheduling Conference Date: July 28, 2022, 9:00 a.m.** |

- 1 -

1   Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff
2   Riviera Beverages, LLC ("Plaintiff") and Defendant Innovasource, LLC
3   ("Defendant") (collectively, the "Parties") hereby make the following initial
4   disclosures in this case:

5   I.   **STATEMENT OF THE CASE**
6        **A.   Plaintiff's Statement**
7        The formula for the disinfectant cleaner ("Product") was developed and
8   approved by Defendant for Plaintiff to produce and co-pack the Product in Plaintiff's
9   facility in the Orange County, California. Ronald Roach, a representative of
10  Defendant, personally inspected Plaintiff's facility and co-packing process as part of
11  the approval for Plaintiff to produce and co-pack the Product.

12       Using the formula for the Product developed and approved by Defendant, and
13  the gallon bottles and caps for the Product selected and approved by Defendant,
14  Plaintiff produced the Product pursuant to Purchase Orders issued by former
15  Defendant Midwest Ethanol, LLC ("Midwest" purportedly terminated under
16  Minnesota law) to Plaintiff including, but not limited to, Purchase Order number
17  D00077 for $1,225,925.25 on September 18, 2020, and Purchase Order number
18  D000100 for $522,974.80 on November 19, 2020.

19       On or about March 22, 2021, Plaintiff emailed an accounting to Midwest
20  reflecting outstanding amounts owed to Plaintiff totaling over $250,000.00. On or
21  about March 25, 2021, Midwest requested that Plaintiff re-label the Product with
22  Ultra Guard labels. Plaintiff complied with Midwest's request by re-labeling about
23  4,000 gallons of the Product. Midwest subsequently requested that Plaintiff discard
24  all the Product.

25       On or about March 29, 2021, Midwest issued a notice of recall for the Product.
26  On or about April 27, 2021, Midwest scheduled three (3) trucks to start the removal
27  of raw materials purchased by Midwest and stored at Plaintiff's facility for the

28

JOINT RULE 26(f) REPORT
Case No. 8:22-CV-00912-FWS-ADS

1   Product. On or about April 29, 2021, Midwest delivered and parked six (6) 53' trailers
2   at Plaintiff's facility to store the pallets of the Product that had been stored inside
3   Plaintiff's plant. On or about May 7, 2021, Midwest scheduled two (2) more trucks
4   to remove additional raw materials purchased by Midwest and stored at Plaintiff's
5   facility for the Product. Midwest abandoned over 900 pallets (172,000+ gallons) of
6   the failed Product at Plaintiff's facility.

7       The alleged unstable formula for the Product developed and approved by
8   Defendant, and the gallon bottles and caps for the Product selected and approved by
9   Defendant, for Plaintiff to produce and co-pack the Product in Plaintiff's facility in
10  the Orange County, California, caused the Product to expand resulting in the failure
11  of the bottles and/or caps resulting in damages to Plaintiff.

12      **B.**   **<u>Defendant's Statement</u>**

13      The Product at issue is a disinfectant spray developed and formulated by
14  Innovasource. At the height of the COVID-19 pandemic, The Libman Company,
15  seeking to capitalize on the burgeoning market for disinfectants, came to
16  Innovasource and obtained a license from Innovasource to manufacture, distribute,
17  and sell the Product. Libman could either manufacture the product itself or use a
18  contract manufacturer, including several "in-network" contract manufacturers that
19  had existing relationships with Innovasource. Libman decided to use Midwest, a
20  company that had previously contracted with Innovasource, to manufacture the
21  Product since Libman did not have the facilities to do so. Unbeknownst to
22  Innovasource, Midwest then further subcontracted out the Libman production to
23  Riviera.

24      Libman and its contract manufacturer Midwest were responsible for using
25  appropriately vented bottles and caps as well as to follow proper manufacturing
26  procedures and quality control. Innovasource instructed Libman and Midwest to use
27  proper bottles and tops because without adequate venting, the formula can expand

28

and leak out. Because Libman and Midwest were making the Product during the height of the COVID-19 pandemic, however, proper bottles and tops for disinfectants were in short supply. Innovasource did not select and approve the bottles and tops. The product issues encountered by Libman, Midwest, and Riviera were due to a combination of their use of improper bottles and tops, failing to follow Innovasource's instructions (for instance, Midwest/Riviera allowed metal equipment to contact the formula, which caused an adverse chemical reaction), and failing to follow proper manufacturing procedures such as providing adequate supervision and conducting quality testing. As a further example, Riviera made product for Midwest during the California wildfires in late 2020, and the conditions were so bad that Riviera had to evacuate the manufacturing facility on several occasions to allow the soot and smoke to clear the building. This soot settled on the bottles inside the building, as well as inside the open bottles on the line. The soot had compatibility issues with the peroxide in the Product as well, which also caused oxidation and excessive off-gassing inside bottles.

Because it is a disinfectant, the Product is classified as a "pesticide" subject to the Federal Insecticide, Fungicide, and Rodenticide Act, and regulated by the EPA. As such, the Product has been through a very thorough stability-testing process with EPA-approved labs, which is required for an EPA-approved disinfectant, including several stability tests in ovens, freeze/thaw tests, and other testing to ensure stability in several different bottles and closure systems, as well as real-world long-term testing. Innovasource has not encountered the bottle leakage issues reported by Libman and complained of by Riviera when the Product has been properly produced by other licensees, following all specifications and manufacturing guidelines: water quality, blending equipment, filling equipment, bottle and closure specs, and necessary quality control testing for the proper time.

- 4 -

Finally, Innovasource did not know who or what Riviera was at the time it was producing the Product for Midwest. Midwest led Innovasource to believe that the Orange County production facility was Midwest's, and indeed registered it as a Midwest facility. It is now clear that Midwest was using Riviera as a subcontractor to manufacture the Product for Libman, though Riviera itself did not have a license in Innovasource's IP and Innovasource was never made aware of the relationship.

## II.   SUBJECT MATTER JURISDICTION

The court has original jurisdiction over the action under 28 U.S.C. § 1332(a)(1), and the case was removed to this court pursuant to 28 U.S.C. § 1441(b).

## III.   LEGAL ISSUES

### A.   Plaintiff's Statement

#### 1.   Economic loss rule

The economic loss rule argued by Defendant in Section III(B)(1) below does not apply when the commercial relationship of the parties does not involve the sale of goods or products. *North American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 780 (1997). In any event, the parties, who were not in privity of contract, did have a special relationship such that the damages caused by Defendant's negligence were reasonably foreseeable. See *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804,157 Cal.Rptr. 407 (1979).

Defendant knew that Plaintiff was performing co-packing services of the Product for Midwest, contrary to Defendant's claimed ignorance. Ronald Roach, Director of Business Development at Innovasource, personally inspected Plaintiff's facility and co-packing process as part of the approval for Plaintiff to produce and co-pack the Product. Defendant's services in approving Plaintiff's facility to produce the Product using Defendant's formula subjects Defendant to the recovery of all foreseeable damages caused by Defendant's unstable formula.

### 2.    Libman's liability

While Plaintiff has formally demanded production of documents from Defendant reflecting any involvement by Libman or Midwest in the specifications for bottles and caps for the Product (rather than Defendant itself), no such documents have been produced by Defendant. Defendant's claim in Section I(B) above that "Libman and its contract manufacturer Midwest were responsible for using appropriately vented bottles and caps" seems to confirm that Defendant specified the bottles and caps to be used for the Product. In the event that Defendant produces evidence that Libman did not follow Defendant's specifications, Plaintiff may also seek leave to add Libman as a defendant in this case.

### B.    **Defendant's Statement**

### 1.    Economic loss rule

Plaintiff's claims against Innovasource are all tort-based. *See* Complaint, ¶ 20 ("Defendants so negligently and carelessly developed and approved the formula for the Product…"). The indemnity claims are based on an alleged violation of the same tort duty. *See* Complaint, ¶ 22 ("As a result of Defendants' negligent and careless development and approval of the formula for the Product… Plaintiff has suffered claims and lawsuits by vendors…").

There was no privity between Innovasource and Plaintiff, and no special relationship existed between the two. Plaintiff is therefore barred by the economic loss rule from recovering any damages from Innovasource under its negligence based claims apart from alleged property damage. *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1023, 1030 (E.D. Cal. 2013) (allowing recovery for physical and property damage, but the "[t]he remainder of plaintiff's alleged damages, including loss of reputation and lost profits and sales, is covered by the economic loss rule and cannot sound in tort"); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 986–987 (2004) (costs of recall and replacement of faulty helicopter parts, along with

1  employee time are economic losses); *North American Chemical Co. v. Superior*
2  *Court*, 59 Cal.App.4th 764, 777 n. 8 (1997) (economic loss may include damages
3  paid to third parties as a result of defendant's negligence). "If a plaintiff is in a
4  contractual relationship with the manufacturer of a product, the plaintiff can sue in
5  contract for the normal panoply of contract damages, including foreseeable lost
6  profits and other economic losses. Whether or not the plaintiff is in a contractual
7  relationship with the manufacturer, the plaintiff can sue the manufacturer in tort only
8  for damages resulting from physical injury to persons or to property other than the
9  product itself." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th
10  Cir. 2007).

11         **2.     Libman's liability**

12         Libman breached its contractual obligations with Innovasource to properly
13  manufacture the Product and follow specifications, and is liable for Riviera's
14  damages, as well as Innovasource's.

15         The License Agreement between Innovasource and Libman required Libman
16  to market and sell Products pursuant to the specifications and instructions provided
17  by Innovasource, and to follow proper manufacturing procedures. The License
18  Agreement further requires Libman to indemnify Innovasource for third party claims
19  directly resulting from (i) property damage due to Libman's negligence, and (ii)
20  Libman's failure to comply with applicable laws associated with the manufacture,
21  sale and distribution of the Product.

22  **IV.   DAMAGES**

23         **A.     Plaintiff's Damages**

24         Plaintiff's damages caused by the alleged unstable formula for the Product
25  developed and approved by Defendant include, without limitation, the cancellation
26  of orders for the Product and lost profits for the three years totaling in excess of
27  $7,000,000, the failure and loss of co-packed Product in excess of $500,000, the

28                                          - 7 -

vendor claims relating to co-packing the Product in excess of $389,000, the storage of the abandoned Product at Plaintiff's facility in excess of $440,000, and the cleanup of the failed Product at Plaintiff's facility in excess of $72,000, totaling in excess of $8,600,000.

**B.    Defendant's Damages**

Midwest owes Innovasource $495,960.00 in accrued and unpaid license fees. The contracts Libman and Midwest have with Innovasource require payment of license fees to Innovasource based on the number of units of Product manufactured (not sold) by Libman or Midwest. License fees are due within thirty days after manufacture. Libman is responsible for the accrued license fees because its breaches of contractual and other duties directly led to Midwest not paying Innovasource.

To the extent that damages are asserted against Innovasource based on Riviera's claims, Innovasource's contract with Libman requires Libman to indemnify Innovasource against third party claims resulting from any property damage due to any intentional or negligent act of Libman, or Libman's failure to comply with laws for the manufacture, sale, and distribution of the Product.

**V.    PARTIES AND EVIDENCE**

**A.    Parties**

1.    Plaintiff Riviera Beverages, LLC, a California limited liability company.

2.    Defendant Innovasource, LLC, a North Carolina limited liability company. Energizer Auto Sales, Inc., is the parent corporation and sole member of Innovasource.

**B.    Percipient Witnesses**

1.    Chris Solberg, manager for Riviera Beverages, LLC, c/o Fingal, Fahrney & Clark, 5120 Campus Drive, Suite 200, Newport Beach, California 92660, (949) 723-8100.

- 8 -

1    2.    Francisco Antillon, employee of Riviera Beverages, LLC, c/o Fingal,

2  Fahrney & Clark.

3    3.    Andrew Fay, SVP Business Development at Innovasource, LLC, c/o

4  Norton Rose Fulbright US LLP, 555 South Flower Street, 41st Floor, Los Angeles,

5  California 90071, (213) 892-9200.

6    4.    Barnwell S. Ramsey, VP Operations of Innovasource, LLC, c/o Norton

7  Rose Fulbright US LLP.

8    5.    Matthew Little, manager at Innovasource, LLC, c/o Norton Rose

9  Fulbright US LLP.

10    6.    Ronald Roach, Director of Business Development at Innovasource,

11  LLC.

12    7.    Sandy Porter, Senior Formulations Chemist at Innovasource, LLC, c/o

13  Norton Rose Fulbright US LLP.

14    8.    Jeremy Brown, formerly of Midwest Ethanol, LLC, c/o Taft, Stettinius

15  & Hollister LLP, 2200 IDS Center 80 South 8th Street, Minneapolis, Minnesota

16  55402-2157, (612) 977-8400.

17    9.    Dustin Wilson, formerly of Midwest Ethanol, LLC, c/o Taft, Stettinius

18  & Hollister LLP.

19    10.    Matthew Meyer, formerly of Midwest Ethanol, LLC, c/o Taft, Stettinius

20  & Hollister LLP.

21    11.    Henry Morita, formerly of Midwest Ethanol, LLC, c/o Taft, Stettinius

22  & Hollister LLP.

23    12.    Andrew Libman, President of The Libman Company, c/o Suneeta

24  Hazra, Esq., Arnold & Porter Kaye Scholer LLP, 1144 15th St Suite 3100, Denver,

25  Colorado 80202, (303) 863-2366.

26    13.    Tom Kane, The Libman Company, c/o Suneeta Hazra, Esq., Arnold &

27  Porter Kaye Scholer LLP.

28
- 9 -

14.    Michael T. Novak, Esq., Keller & Heckman LLP, 1001 G Street, N.W., Suite 500 West, Washington D.C. 20001, (202) 434-4100.

    a.    Innovasource objects to Plaintiff's inclusion of Mr. Novak as a percipient witness; he was/is the regulatory attorney for Innovasource and any testimony he may have, other than as to his communications with regulators, is privileged and/or protected by the attorney work product doctrine.

15.    Cindy Luna-Zaragoza, Senior Technology Engineer at Energizer Batteries, c/o Norton Rose Fulbright US LLP.

**C.    Documents**

1.    Product Licensing Agreement between The Libman Company and Innovasource, LLC dated July 24, 2020.

2.    Product License & In-Network Contract Manufacturer Agreement between Midwest Ethanol, LLC and Innovasource, LLC.

3.    Master Recipe 2.4% $H_2O_2$ Disinfectant Cleaner - Fragrance Free - 4/20/2020.

4.    Master Recipe 2.4% $H_2O_2$ Disinfectant Cleaner - Lemon Flower Breeze Fragrance - 4/20/2020.

5.    Master Recipe 2.4% $H_2O_2$ Disinfectant Cleaner - Lemon Blossom Breeze Fragrance - 4/20/2020.

6.    Master Recipe 2.4% $H_2O_2$ Disinfectant Cleaner - Lemon Breeze Fragrance - 4/20/2020.

7.    Master Recipe 2.4% $H_2O_2$ Disinfectant Cleaner - Fresh Citrus Floral Fragrance - 4/20/2020.

8.    Manufacturing Process 2.4% $H_2O_2$ Disinfectant Cleaner - 4/20/2020.

9.    Performance Criteria 2.4% $H_2O_2$ Disinfectant Cleaner - 4/20/2020.

10.    Revision History 2.4% $H_2O_2$ Disinfectant Cleaner - 4/20/2020.

11.   Libman Safety Data Sheet (8 pgs) - Multi-Surface Disinfecting Cleaner - 7/31/20.

12.   Midwest Purchase Order number D00077 for $1,225,925.25 - 9/18/2020.

13.   Midwest Purchase Order number D000100 for $522,974.80 - 11/19/2020.

14.   Innovasource Review Report dated January 18, 2021.

15.   Emails relating to peroxide degradation causing failure of Product.

16.   Emails relating to removal of Product from store shelves.

17.   Letters and Multiple Voluntary Industry Reporting Form for 6(a)(2) Adverse Effects Incident Information relating to injuries from Product.

18.   California Plastics purchase orders, invoices, and claims for $94,412.96.

19.   Hood Container purchase orders, invoices, and claims for $144,427.28.

20.   Blackhawk purchase orders, invoices, and claims for $29,518.80.

21.   Ororo purchase orders, invoices, and claims for $6,885.89.

22.   Toro Pallets purchase orders, invoices, and claims for $50,800.00.

23.   Gold Water purchase orders, invoices, and claims for $33,031.67.

24.   Adler purchase orders, invoices, and claims for $1,584.11.

25.   Gamer Packaging purchase orders, invoices, and claims for $28,851.02.

26.   Product storage expense records.

27.   Cleanup and disposal of abandoned Product expense records.

28.   Lost profit records.

29.   Photographs of damages to equipment and Product.

30.   Emails among Innovasource, Midwest, and Libman relating to production issues and reported incidents.

31.   Innovasource Invoice No. 3963 to Midwest Ethanol.

32.   EPA files and records relating to the Product.

## VI.   INSURANCE

Innovasource is determining insurance coverage.

## VII.   MANUAL FOR COMPLEX LITIGATION

The Parties agree none of the procedures of the Manual for Complex Litigation should be utilized.

## VIII.   MOTIONS

Innovasource seeks leave to file a third-party complaint against Libman, and a crossclaim against Midwest, to be filed within 30 days of the Scheduling Conference. Innovasource did not seek to file a cross-complaint in state court while undertaking jurisdictional discovery, in order to preserve its right to remove. *See Acosta v. Direct Merchants Bank*, 207 F.Supp.2d 1129, 1132 (S.D. Cal. 2002) (waiver of removal found where defendant seeks affirmative relief in the state court if not compelled to do so, *e.g.*, by filing a permissive counterclaim, or cross-complaint).

## IX.   DISPOSITIVE MOTIONS

Innovasource may seek summary judgment because it did not breach any duty owed to Riviera. Innovasource may also seek partial summary judgment on Riviera's various damages claims barred by the economic loss rule.

## X.   STATUS OF DISCOVERY

The Parties are conducting written discovery following which they anticipate taking depositions of percipient witnesses.

## XI.   DISCOVERY PLAN

The Parties do not anticipate changes in disclosures under Federal Rule of Civil Procedure 26(a), and do not request phased discovery. The Parties do not seek modification of discovery limitations. A Protective Order has been entered.

The Parties anticipate discovery on the following subjects:

1.   Riviera's relationship and communications with Libman.

2.   Riviera's relationship and communications with Midwest.

- 12 -

3.     Who directed the recall of the Product.

4.     Whether Riviera/Midwest followed Innovasource's formula and specifications for the Product.

5.     Riviera's/Midwest's manufacturing process and practices for the Product.

6.     Midwest and/or Libman's oversight, supervision, and control over Riviera's manufacture of the Product.

The Parties anticipate the following third-party discovery:

1.     Subpoenas to former Midwest personnel (Midwest has been terminated).

2.     Subpoenas to the EPA.

3.     Subpoenas to Plaintiff's vendors and suppliers.

4.     Subpoenas to Libman (if it is not brought in as a party).

## XII.   **DISCOVERY CUT-OFF**

Please see the Schedule Worksheet, attached as Exhibit A.

## XIII.  **EXPERT DISCOVERY**

Please see the Schedule Worksheet, attached as Exhibit A.

## XIV.  **SETTLEMENT CONFERENCE AND ALTERNATIVE DISPUTE RESOLUTION**

The Parties are amenable to early mediation of the dispute.

## XV.   **TRIAL ESTIMATE**

The Parties presently estimate that the jury trial will take between 7 and 10 days.

## XVI.  **TRIAL COUNSEL**

Christopher R. Clark of Fingal, Fahrney & Clark, LLP will be trial counsel for Plaintiff.

1    Jeffrey B. Margulies of Norton Rose Fulbright US LLP will be trial counsel

2  for Defendant.

3  **XVII. MAGISTRATE JUDGE**

4    The Parties have not agreed to have the case tried by a magistrate judge.

5  **XVIII.    INDEPENDENT EXPERT OR MASTER**

6    The Parties have not agreed to use an independent expert or master at this time.

7  **XIX. OTHER ISSUES**

8    None.

9

10  Dated:  July 14, 2022                  **FINGAL, FAHRNEY & CLARK,**
                                           **LLP**
11

12                                         By _____

13                                         CHRISTOPHER C. CLARK

14                                         Attorneys for Plaintiff
                                           RIVIERA BEVERAGES, LLC
15

16

17  Dated:  July 14, 2022                  **NORTON ROSE FULBRIGHT US**
                                           **LLP**
18

19

20                                         By */s/Jeffrey B. Margulies*

21                                         JEFFREY B. MARGULIES

22                                         Attorneys for Defendant
                                           INNOVASOURCE LLC

23

24

25

26

27

28
                                  - 14 -

## <u>ATTESTATION REGARDING SIGNATURES</u>

Pursuant to Local Rule 5-4.3.4(a)(2), the undersigned hereby attests that all signatories listed above, and whose behalf this filing is submitted, concur in the filing's content and have authorized this filing.

Dated:  July 14, 2022

**FINGAL, FAHRNEY & CLARK, LLP**

By _____
CHRISTOPHER C. CLARK
Attorneys for Plaintiff
RIVIERA BEVERAGES, LLC

- 15 -

**JUDGE FRED W. SLAUGHTER**
## SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

Please complete this worksheet jointly and file it with your Joint Rule 26(f) Report.
**The parties must make every effort to agree on dates or the court will set them.**

| Case No. 8:22-cv-00912-FWS-ADS | Case Name:  Riviera Beverages, LLC v. Innovasource, LLC, et al. | | | |
|---|---|---|---|---|
| **Trial and Final Pretrial Conference Dates** | | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy | Court Order mm/dd/yyyy |
| Check one: [X] Jury Trial  or  [ ] Bench Trial<br>**[Tuesday at 8:30 a.m., within 18 months after Complaint filed]**<br>Estimated Duration: ___21___ Days | | | 10/31/2023 | [ ] Jury Trial<br>[ ] Bench Trial<br>_____ Days |
| Final Pretrial Conference ("FPTC") [L.R. 16], Hearing on Motions *in Limine*<br>**[Thursday at 8:30 a.m., at least 15 days before trial]** | | | 10/12/2023 | |

| Event [1]<br>*Note:* Hearings shall be on Thursdays at 10:00 a.m. Other dates can be any day of the week. | Weeks Before FPTC | Pl(s)' Date mm/dd/yyyy | Def(s)' Date mm/dd/yyyy | Court Order mm/dd/yyyy |
|---|---|---|---|---|
| Last Date to **Hear** Motion to Amend Pleadings/Add Parties [Thursday] | | | 09/29/2022 | |
| Non-Expert Discovery Cut-Off<br>**(no later than deadline for filing dispositive motions)** | 17 | | 06/08/2023 | |
| Expert Disclosure (Initial) | | | 04/14/2023 | |
| Expert Disclosure (Rebuttal) | | | 05/12/2023 | |
| Expert Discovery Cut-Off | 12[2] | | 07/20/2023 | |
| Last Date to **Hear** Motions [Thursday]<br>• Motion for Summary Judgment due at least 6 weeks before hearing<br>• All other motions due at least 4 weeks before hearing<br>• Opposition due 2 weeks after Motion is filed<br>• Reply due 1 week after Opposition is filed | 12 | | 07/20/2023 | |
| Deadline to Complete Settlement Conference [L.R. 16-15]<br>*Select one:* [ ] 1. Magistrate Judge (with Court approval)<br>[ ] 2. Court's Mediation Panel<br>[X] 3. Private Mediation | 10 | | 08/03/2023 | [ ] 1. Mag. J.<br>[ ] 2. Panel<br>[ ] 3. Private |
| **Trial Filings (first round)**<br>• Motions *in Limine* with Proposed Orders<br>• Memoranda of Contentions of Fact and Law [L.R. 16-4]<br>• Witness Lists [L.R. 16-5]<br>• Joint Exhibit List [L.R. 16-6.1]<br>• Joint Status Report Regarding Settlement<br>• Proposed Findings of Fact and Conclusions of Law [L.R. 52] (bench trial only)<br>• Declarations containing Direct Testimony, if ordered (bench trial only) | 3 | | 09/21/2023 | |
| **Trial Filings (second round)**<br>• Oppositions to Motions *in Limine*<br>• Joint Proposed Final Pretrial Conference Order [L.R. 16-7]<br>• Joint/Agreed Proposed Jury Instructions (jury trial only)<br>• Disputed Proposed Jury Instructions (jury trial only)<br>• Joint Proposed Verdict Forms (jury trial only)<br>• Joint Proposed Statement of the Case (jury trial only)<br>• Proposed Additional Voir Dire Questions, if any (jury trial only)<br>• Evidentiary Objections to Declarations of Direct Testimony (bench trial only) | 2 | | 09/28/2023 | |

**PROOF OF SERVICE**

1

I, Christopher R. Clark, am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action. My business address is that of Fingal, Fahrney & Clark, LLP, 5120 Campus Drive, Suite 200, Newport Beach, California 92660.

On July 14, 2022, I served the foregoing **JOINT RULE 26(f) REPORT** on interested parties in this action by placing a true copy thereof enclosed in a sealed envelope, addressed as follows:

Jeffrey B. Margulies, Esq.
Raymond J. Muro, Esq.
Notron Rose Fulbright US LLP
555 S. Flower Street, 41st Floor
Los Angeles, California 90071
Tel. (213) 892-9200
Fax: (213) 892-9494
Email: jeff.margulies@norton
rosefulbright.com;
raymond.muro@nortonrosefulbright.com

_____   BY MAIL

I deposited such envelope in the mail at Newport Beach, California.  The envelope was mailed with postage thereon fully prepaid.

I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in Newport Beach, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_X_   VIA ELECTRONIC TRANSMISSION

Via electronic transmission, I caused the above-referenced document to be transmitted to the email addressees shown on the attached service list.

_____   BY OVERNIGHT MAIL

I deposited such envelope in the Overnight Express Mail at Newport Beach, California.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 14, 2022, at Newport Beach, California.

_____
Christopher R. Clark